## JOHN O. LENZ AND OTHERS v. COON CREEK WATERSHED DISTRICT AND OTHERS.

153 N. W. (2d) 209.

September 1, 1967—No. 40,441.

*Mandt Torrison, Richard A. Emerick,* and *Kelley & Torrison,* for appellants.

*Virgil C. Herrick, Weaver, Talle & Herrick, Raymond A. Haik,* and *Erickson, Popham, Haik & Schnobrich,* for respondents.

ROGOSHESKE, JUSTICE.

Appeal from a judgment. On June 4, 1962, the Board of County Commissioners of Anoka County petitioned the Coon Creek Watershed District to improve 27.1 miles of the county Coon Creek drainage

channel by increasing its capacity to alleviate periodic flooding, and thereby reduce damage to roads and bridges, and by providing an improved outlet for existing county ditches, for discharge from a game refuge, for drainage of agricultural land, and for storm sewer systems (principally from the municipalities of Blaine and Coon Creek).[1] This proposed project was opposed by numerous affected landowners, including those who are appellants in this action.

As required by the Minnesota Watershed Act, Minn. St. 112.34, et seq., which we held constitutional in Adelman v. Onischuk, 271 Minn. 216, 135 N. W. (2d) 670, the Board of Managers of the Coon Creek Watershed District (hereinafter called Managers) held public hearings on the desirability of ordering the proposed project on February 29, March 7, 9, and 26, and April 4, 1964. Evidence was received both from the proponents and the opponents of the proposed project, including the engineer's plan and report and the report of the appraisers.[2] On June 4, 1964, the Managers entered an order establishing the project and approved, as modified, the assessment of benefits and allowance of damages found by the appraisers.

Simultaneous appeals from this order were made to the Water Resources Board (hereinafter called Board) and the district court. These appeals named John O. Lenz and Robert J. Nehring as appellants in the caption and over 1,000 other persons as appellants in an attached appendix. These persons were individual owners of parcels of land affected by the project.

The issues raised in the appeal to the district court fell into three general categories: (1) Those questioning the constitutionality of the Watershed Act pursuant to which the watershed district had been estab-

---

[1] The proposal was the result of joint efforts by the county board, the supervisors of the Anoka County Soil Conservation District, and the Soil Conservation Service of the United States Department of Agriculture and was intended as a part of the overall improvement plan of the Coon Creek Watershed District, previously adopted pursuant to Minn. St. 112.46, et seq., of the Minnesota Watershed Act.

[2] Minn. St. 112.53 and 112.54.

lished; [3] (2) those relating to the validity of the Managers' order; and (3) those relating to the propriety of the respective amounts assessed as benefits and allowed as damages for each of the parcels of land owned by the individual appellants.

On September 14, 1964, pursuant to a motion by the Managers, the district court struck from the notice of appeal most of those grounds raising issues falling into category (2) because appellants had failed to follow the provisions of Minn. St. 1961, § 112.80, subd. 8, of the act, which requires an appellant to exhaust the administrative remedy of a review by the Board before an appeal can be taken to the court. It reserved action primarily with respect to the constitutional issues and questions of benefits and damages to the individual landowners. So far as we can ascertain, appellants did not then, nor do they now, question the propriety of this action. Instead, they pursued their appeal to the Board. After hearings at which the Board, with appellants' approval, considered a written summary of some of the evidence presented to the Managers by appellants, the exhibits submitted to the Managers, and additional oral evidence submitted by appellants, the Board on March 29, 1965, affirmed the Managers' order. Appellants appealed to the district court from the Board's decision,[4] alleging as grounds therefor those relating to the validity of the Managers' order which had previously been stricken from their notice of appeal to that court from that order, and also alleging that the Board's findings of fact were not sup-

[3] At the time this appeal was made, our decision in Adelman v. Onischuk, 271 Minn. 216, 135 N. W. (2d) 670, filed May 18, 1965, had not yet been handed down. This decision settled most, if not all, of the constitutional issues, and appellants appear to have abandoned all save one, that relating to the method of assessments without regard to cash value, which is assigned as error on this appeal.

[4] We are handicapped by the absence of a settled case in ascertaining the issues raised on appeal to the district court from the Board's order. It appears from the clerk's file and the printed record furnished that only those issues relating to the validity of the Managers' order were raised on appeal to the Board, and only those raising constitutional issues and the question of benefits and damages to individual landowners remained on appeal from the Managers' order.

ported by the evidence, that the appraisers' method of appraisal was unconstitutional, and that the Board unduly restricted the appellants in their submission of evidence. In addition, appellants requested the court to "take additional testimony on all issues of fact."

The two appeals by appellants to the district court from the respective orders of the Managers and Board were consolidated. On May 19, 1965, all the documentary evidence submitted to the Board was certified and forwarded to the district court along with a transcript of the oral evidence received by the Board. On June 9, 1965, the Managers moved the court "upon all of the pleadings, files and records herein" to have the appeal from the Managers' order dismissed in its entirety and to have the court deny appellants' request "that the Court take additional testimony and ordering counsel for the parties to file final briefs pursuant to the Court's review by certiorari of the order of the Minnesota Water Resources Board." Appellants countered with a motion asking the court to vacate the order of the Managers and that of the Board and to grant judgment to appellants, or in the alternative to remand the case to the Managers for further action. These motions were argued orally off the record and submitted on written briefs.

On January 19, 1966, the district court rendered a decision on the merits, issuing findings of fact, conclusions of law, and order for judgment which in effect affirmed the decisions of the Managers and the Board and ordered both the appeals dismissed with the exception that appellants Nehring and Lenz were allowed to have the amount of their individual assessments and damages decided by a jury. The court, in making this decision, had before it and considered all the evidence considered by the Board, although these files and records had not been formally offered and were not received into evidence by the court either at the hearing on the motions or at any formal call of the case for trial. Appellants made a motion for amended findings or "in the alternative for a trial (new trial)," in which they claimed the right to present additional evidence "on all issues of fact" raised in their appeals. This motion was denied on May 16, 1966. A memorandum accompanying the order of the district court expressly determined that a "trial de novo in the District Court" was not required since the review was by certiorari, the

evidence presented to the Board was "sufficient to warrant and require the findings and order made herein," and at the respective hearings before the Managers and the Board, "[a]ll parties in interest * * * were given an opportunity to be heard." In this manner the court reaffirmed its prior refusal to take additional testimony "on all issues of fact raised by the notices of appeal," as again urged by appellants in general terms without specifying any specific fact issue or issues. Judgment was entered on May 19, 1966.

This appeal from the judgment is based upon some, but not all, of the grounds urged before the district court. In particular, while appellants repeatedly assert they should be given an opportunity to present further evidence to the court, in their assignment of errors they do not claim that there was insufficient evidence to support the Board's findings that total benefits accruing from the project would exceed its total costs. Nor do they raise any constitutional issues except that "the assessments were made without regard to cash valuation" contrary to Minn. Const. art. 9. Their assignment of errors primarily concerns the question of the jurisdiction of the Managers to establish the project, the claimed disqualifying personal interest of certain officials, and what might be generally described as procedural problems.

■ Appellants' entire presentation of this appeal is colored by their insistence that the district court erred in denying them the right to have a trial de novo "on all issues of fact" raised by their appeal, principally as to the specific issue of whether the total benefits exceeded the project's total cost. We need consider this alleged right only with reference to this specific issue, as it is the only issue of fact specified by appellants remaining after the numerous preliminary legal issues, also presented on appeal to this court, have been decided. Admittedly, § 112.80 of the Watershed Act, governing appeals from the order of the Managers, appears to authorize a de novo trial in the district court as to some matters, including those "which [affect] a substantial right." The issue of benefits exceeding costs was one of the grounds specified in the appeal from the Managers, but it was stricken prior to the appeal from the Board, and this action by the district court is not assigned as error on this appeal. We, therefore, do not decide whether appellants would have

had a right to such a trial under § 112.80 had this issue remained as a part of their appeal from the Managers' order.[5]

We are persuaded that on the specific issue raised on appeal from the Board,[6] appellants had no right to a trial de novo, as they were afforded a certiorari review, the only judicial review authorized by Minn. St. 1961, § 112.792, then governing appeals from the Board.[7]

Section 112.792, subd. 1, provides in part:

"Any person * * * aggrieved by any * * * final decision of the board may have the same reviewed by certiorari proceedings in the district court * * *. The court of its own motion, or on application of any party, *may, in its discretion,* take additional testimony on any issue of fact, but no jury trial shall be had." (Italics supplied.)

It is clear that under this statute appellants had no right to a trial de novo before the court. The district court did, however, have discretionary authority to allow appellants to present additional evidence. The court, in effect, twice refused to do so. We cannot reverse the court's exercise of discretion if we can discern any reasonable basis for

---

[5] Because of the language of Minn. St. 1961, § 112.80, subds. 1 and 8, and its confusing relationship to Minn. St. 1961, § 112.792, governing appeals from decisions of the Board, the problem of what specific issues raised on appeal from an order of the Managers are triable to a jury would be difficult enough to resolve, to say nothing of the problem of trying to delineate such issues generally and in the abstract, as appellants, by their general claim that "all issues of fact" are so triable, suggest we do.

[6] While this issue is certainly directly related to the question of the amount of the benefits assessed and damages allowed as to any particular landowner, for which a jury trial is afforded under § 112.80, it must be separated from that question for the purpose of determining the scope of certiorari review of the Board's action under § 112.792.

[7] No other provisions of the act are applicable. Minn. St. 112.801 was not expressly made retroactive and did not take effect until after this appeal had been made. Section 112.80 alone governs appeals from the Managers and not from the Board. This appeal does not come within the scope of Minn. St. 15.0424 because the Board is not required to hold a hearing (see, Minn. St. 1961, § 112.791, and Minn. St. 105.71, subd. 1), a condition precedent to its applicability. See, Minn. St. 15.0411, subd. 4.

it and if it is not wholly arbitrary and capricious.[8] We are persuaded that there was ample justification for the court's decision. Appellants had previously been afforded two opportunities to present evidence at rather extensive hearings held before the Managers and the Board, which were separated by about 8 months in time.[9] Significantly, appellants did not, so far as the record reveals, in their appeal to the district court or to this court specifically refer to any additional evidence they had attempted to submit, make any showing that a valid excuse for its non-submission before the Managers and the Board existed, or show that such evidence could well have affected the decision reached by the court. Under such circumstances, we cannot hold that the court abused its discretion in basing its decision solely upon the evidence that had been presented before the Board.[10]

Appellants also argue that prejudicial error was committed because the evidence presented before the Board, and relied upon exclusively by the district court in making its decision, was not formally introduced in evidence, as at a trial. We cannot agree with this contention. It was a review by certiorari, not a trial de novo. The evidence had been certified to the court by the Board. The motions made by appellants and respondents reflected both an intention and an awareness that the court's decision would be based upon this evidence. Under such circumstances it was not critical that the formal step of introducing the evidence was omitted, for this omission certainly did not affect the basis upon which the court decided the issues raised.

■ Appellants argue that the Managers' order approving this project is void because the initiating petition was signed only by the county

---

[8] See, 1 Dunnell, Dig. (3 ed.) § 399.

[9] There is no merit in appellants' claim that their opportunity to present relevant evidence at the hearing before the Board was prejudicially limited. The district court found no such error had been committed, and, after carefully examining the transcript of the hearing, we agree with this conclusion.

[10] Our task of determining whether the district court abused its discretion was made much more difficult by the fact that any efforts to submit additional evidence appellants might have made before the district court were not transcribed, and we cannot ascertain with certainty what offer of proof, if any, or the nature thereof, was made by appellants.

board and not by the required number of resident freeholders in the district. The validity of this contention is dependent upon the meaning of Minn. St. 1961, § 112.48, subd. 1, which provides in part:

"After the project and improvement plan of the district has been approved and adopted, as provided for in section 112.46, a petition may be filed with the managers for any project or improvement within the district conforming in general with said plan. The petition therefor must be signed by not less than 25 percent of the resident freeholders, or by the owners of more than 25 percent of the property within the limits of the area proposed to be improved, provided however if the project or improvement petition consists of a drainage proceeding as defined in Minnesota Statutes, Chapter 106, such petition shall be signed by a majority of the resident owners of the land described in the petition or by the owners of at least 60 percent of the areas of such land. The lands described in the petition shall be those over which the proposed improvement passes or is located, *or such petition may be signed by a county board of any county affected,* or by the governing body of any city, village, or borough lying wholly or partly within the area proposed to be improved. Provided, however, if the proposed project affects lands exclusively within a city, village, or borough, the petition *shall originate* from the *governing body* of such city, village, or borough." (Italics supplied.)

The issue is whether, under this provision, a watershed project may be initiated by a petition signed only by a county board. Our ultimate goal in interpreting this statute is, of course, to ascertain and give effect to the intention of the legislature.[11] Where this intention is clearly manifested by plain and unambiguous language, no construction is necessary nor permitted.[12] But the wording of this section is obviously ambiguous with respect to the issue confronting us.

Appellants argue that the legislature intended by the language used to create the same type of procedural system as it did for the initiation

---

[11] County of Hennepin v. City of Hopkins, 239 Minn. 357, 58 N. W. (2d) 851.

[12] See, Minn. St. 645.16; 17 Dunnell, Dig. (3 ed.) § 8938.

of drainage projects under Minn. St. 106.031 of the Drainage Code, where a municipal corporation is given the authority to sign the petition, but its signature counts as only one signature for the proposed project and the requirement that the requisite number of landowners also sign the project is not abrogated. That there is a certain forcefulness to this contention cannot be denied, for Minn. St. 1961, § 112.48, subd. 1, explicitly refers to c. 106, and there is an obvious effort in that subdivision to make the percentage of landowners required to sign a drainage improvement petition correspond with the percentages specified in § 106.031. Although this issue is not free from doubt, we are persuaded that a consideration of all the relevant aids to properly ascertain and give effect to the intention of the legislature requires that appellants' position should not be adopted.

In § 106.031 the legislature, after specifying that municipal corporations and other governmental agencies may sign the petition, expressly provided, "but in such case, the signature of such * * * corporation shall * * * count only as one signature on the petition." In § 112.48, subd. 1, the quoted language is omitted, indicating, we believe, an intention to change the procedure, whereby a municipal corporation's signature would count not for one signature, but would in itself be sufficient to initiate the petition. This intention is also indicated by the fact that the legislature, in enacting § 112.48, subd. 1, prefaced the giving of the power to certain governmental bodies to sign a petition with the term "or," whereas in § 106.031 the giving of such a power was stated in a separate sentence. The obvious reason for this change in language would be to transform what had been a power supplementary to the signing by resident freeholders under § 106.031 into a power which was to be an alternative to the signing by the resident freeholders under § 112.48.[13] Also, that it is not inconceivable that the legislature intended to create such a system is indicated by the fact that under Minn. St. 106.511 of the Drainage Code counties are expressly given such a power with respect to certain drainage projects, and under Minn. St. 429.021,

---

[13] The term "or" in common usage is used to indicate alternatives. See, Gay Union Corp. v. Wallace, 71 App. D. C. 382, 112 F. (2d) 192.

subd. 1(2), and 429.031, subd. 1, municipalities are given such power to initiate improvements for storm and sanitary sewer systems within and without the corporate limits.

It is true that statutes in pari materia covering the same subject matter should be construed consistently, if reasonably possible. But this rule of construction is of little assistance in considering the relationship of c. 106 and § 112.48, subd. 1, for both of the two possible systems established by § 112.48, subd. 1, are authorized at different places by provisions of the Drainage Code. See, Minn. St. 106.031, 106.501, and 106.511. Thus, whatever interpretation is given to § 112.48, subd. 1, it will necessarily be inconsistent with some provision of the Drainage Code. For the same reason, appellants' reliance on Minn. St. 112.72 of the Watershed Act, which incorporates the provisions of the Drainage Code only if not inconsistent with the Watershed Act, is not well placed. Moreover, appellants' argument assumes the nonexistence of inconsistent procedures, which is in effect the very issue we must decide.

That the requirement in § 112.48, subd. 1, as to resident freeholders signing the petition is preceded by the term "must" is not determinative. This term has at times been construed to refer to a nonmandatory requirement.[14] Moreover, the term "must" can be a synonym of the term "shall." [15] In § 112.48, subd. 1, the drafters several times used the term "shall" to refer to a requirement which clearly has an alternative. This indicates the drafters did not intend to use such terms only in the expression of mandatory requirements. In fact, since the phrase giving certain governmental bodies the power to sign petitions is preceded by the term "or," it will necessarily have to be interpreted as being an alternative to some requirement preceding it which uses either the term "shall" or "must."

It is true the phrase in question is preceded by a provision that the "lands described in the petition shall be those over which the proposed improvement passes or is located." But the arrangement of the words in this section is not necessarily determinative of their meaning and we

---

[14] See, 17 Dunnell, Dig. (3 ed.) §§ 8954(2) and 8979.

[15] See, Webster's Third New International Dictionary (1961) p. 1492.

must look at the section as a whole to understand the reason and sense of the entire section.[16] We believe the phrase authorizing signing by the county board was intended to have the same effect as a proviso since it serves as an alternative to an otherwise absolute requirement. As such, its placement in the section is not necessarily determinative as to what requirement it modifies.[17]

When one considers the relationship between the authorizing phrase and the phrase immediately preceding it, the ambiguity is compounded. Each refers to an entirely different subject matter. We can discern no rational explanation why or how the authorizing phrase should or could be made an alternative to the requirement that the "lands described in the petition shall be those over which the proposed improvement passes or is located." This lends strong support to the conclusion that it was not intended to modify the quoted phrase, for we must presume that the legislature did not intend a result that is absurd or unreasonable.[18] This rule is particularly apt where the ambiguity raises problems involving governmental functions. Such problems should not be resolved upon technical grounds, but rather upon broad and practical considerations favoring the public interest.[19]

Since it would make no sense to interpret the authorizing phrase as modifying the requirement immediately preceding it, in determining its meaning we must consider the section as a whole so as to harmonize and give effect to each of its parts if reasonably possible.[20] As it deals with the question of who can sign a petition, it is reasonable to conclude that it was intended to modify a prior requirement dealing with this same subject. Because the only requirements preceding this phrase that deal

---

[16] Cf. Governmental Research Bureau v. St. Louis County, 258 Minn. 350, 104 N. W. (2d) 411.

[17] See, Crawford, Statutory Construction, § 297; 2 Sutherland, Statutory Construction (3 ed.) § 4934.

[18] Minn. St. 645.17. See, City of St. Louis Park v. King, 246 Minn. 422, 75 N. W. (2d) 487; Kellerman v. City of St. Paul, 211 Minn. 351, 1 N. W. (2d) 378; McCaffrey, Statutory Construction, § 3.

[19] See, Knopp v. Gutterman, 258 Minn. 33, 102 N. W. (2d) 689.

[20] See, 17 Dunnell, Dig. (3 ed.) § 8951.

with this subject are those referring to the signing by resident freeholders, the inference is that this phrase was intended to be an alternative to these requirements. The fact that this phrase is not preceded immediately by these requirements does not bar this inference from being drawn, for its transposition is justified to give the phrase a reasonable meaning and to avoid an absurdity, particularly where it appears likely that it has been misplaced through inadvertence.[21]

Since none of the other established rules of construction are applicable, this court must necessarily consider the relative merits of the two alternative governmental systems it is claimed the statute establishes in order to be guided as to which system it is more likely the legislature intended to create.[22] In particular the purpose behind the enactment of the statute may be considered in determining this question.[23]

The purpose behind the enactment of Minn. St. c. 112 is stated in § 112.34, subd. 1, where it is provided:

"In order to carry out conservation of the natural resources of the state through land utilization, flood control and other needs upon sound scientific principles for the protection of the public health and welfare and the provident use of the natural resources, the creation of a public corporation, as an agency of the state for the aforesaid purposes, has been provided. This chapter shall be construed and administered so as to make effective these purposes."

Given this purpose, we are persuaded that the legislature intended to create a system where the petition may be signed by either resident freeholders or a designated governmental body. To require a high percentage of the resident freeholders to sign a petition in every instance would create a very expensive and time-consuming procedure, particularly in populous urban areas. Moreover, it would place a veto power in the hands

---

[21] See, Gale v. Commr. of Taxation, 228 Minn. 345, 37 N. W. (2d) 711; 2 Sutherland, Statutory Construction (3 ed.) § 4927.

[22] See, Bricelyn School Dist. No. 132 v. Board of County Commrs. 238 Minn. 53, 55 N. W. (2d) 597.

[23] State ex rel. County of Hennepin v. Brandt, 225 Minn. 345, 31 N. W. (2d) 5; Minn. St. 645.16.

of persons who would probably not be knowledgeable as to the technical problems involved, and who would tend to act pursuant to their immediate individual desires as opposed to the long-run interests of the public as a whole. Such a system would tend to frustrate the efforts of a water district to realize the purpose for which it was created, namely, the speedy accomplishment of needed projects. Therefore, such a system should not be adopted.[24] The fact that the governmental bodies having the power to submit the petition are elected by at least some of the local residents to be affected by the proposed project, and that there is a requirement of full hearings before the Managers, with an adequate appellate process to the Board, district court, and this court, provides sufficient assurance that the public interest and the composite desires of the affected resident freeholders will not be arbitrarily disregarded.

Although the wording of the statute leaves much to be desired, we are persuaded that Minn. St. 1961, § 112.48, subd. 1, should be interpreted as intending that a petition be signed either by the required number of resident freeholders or one of the designated governmental bodies. Since the petition in question was signed by the county board, the Managers had jurisdiction to establish the project.

■ Appellants contend that the findings, conclusions, and order of the Managers must be set aside because the chairman of the county board and four of the five Managers owned land affected and benefited by the proposed improvement. Appellants concede that there is no statute disqualifying these officials from acting under these circumstances. They rely solely upon our decision in In re Petition of Jacobson re County Ditch No. 24, 234 Minn. 296, 48 N. W. (2d) 441. We cannot agree that our holding in Jacobson is determinative. In that case we merely held that the participation in the proceedings by a member of the county board who owned land affected by the proposed improvement was a factor which "would furnish additional support" for the conclusion of the trial court that the county board's order approving the project was arbitrary and unsupported by the evidence. 234 Minn. 301, 48 N. W. (2d) 445. A far different problem is presented in this case where there

---

[24] See, 17 Dunnell, Dig. (3 ed.) § 8986.

is no claim that the Managers' order, including their assessment of benefits and damages, or the decision of the Board on review was not supported by substantial evidence. The narrow legal question raised is whether the participation in the proceedings by interested officials will in itself void the Managers' decision. We feel free to decide this issue as one of first impression.

The purpose behind the creation of a rule which would disqualify public officials from participating in proceedings in a decision-making capacity when they have a direct interest in its outcome is to insure that their decision will not be an arbitrary reflection of their own selfish interests. There is no settled general rule as to whether such an interest will disqualify an official.[25] Each case must be decided on the basis of the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) The nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the other means available, if any, such as the opportunity for review, that serve to insure that the officials will not act arbitrarily to further their selfish interests.

The evidence presented indicates that the officials in question owned a considerable amount of real estate in the district which will be substantially benefited by the proposed improvement. Minn. St. 112.42, subd. 3, of the act requires that the five Managers of this watershed district must be residents thereof. Thus, there is a very good chance that any large improvement would necessarily benefit land owned by some or all of the Managers. Moreover, there is an adequate procedure for reviewing any decision made by the Managers. They can approve a proposed project only after a full public hearing.[26] Their decision can be appealed to the Board, where there is a de novo determination.[27] The Board has the power to take additional evidence [28] and must create

[25] See, 2 Davis, Administrative Law Treatise, §§ 12.01 to 12.06.
[26] See, Minn. St. 112.53 and 112.54.
[27] See, Minn. St. 1961, § 112.791.
[28] See, Minn. St. 105.77, 112.78; Minn. St. 1961, § 112.791.

a record.[29] The Board's determination in turn can be reviewed by certiorari in a district court, where additional evidence can also be taken.[30] And, of course, the district court's decision can be appealed to this court.

We are persuaded that under these circumstances there is not a sufficient need for this court to create a rule disqualifying per se these officials from acting.[31] In making this determination, we have considered that the legislature reached a similar conclusion. It failed to provide for such disqualification as to managers, whereas it expressly provided for such disqualification of appraisers, who actually make the factual determination of benefits and damages, by enacting Minn. St. 112.50, which states that such appraisers must be "disinterested resident freeholders of the state." Also, even without this safeguard, such potential conflict of interest does not itself disqualify members of a municipal council who not infrequently assess lands owned by them for municipal improvements.

This decision does not bar a consideration of the interest of such officials as a relevant factor in determining whether their actions were arbitrary, nor a determination that certain proceedings are void because they acted pursuant to this interest. Anything inconsistent with this decision, said by way of dicta in Jacobson, should be discounted.

■ There is no merit in appellants' contention that the county board's petition to the Managers asking that the proposed project be undertaken was void because the county board failed to hold a hearing as required by Minn. St. 112.65. This section provides:

"Subdivision 1. The managers of a district shall take over when directed by the district court or county board any judicial or county drainage system within the district, together with the right to repair, maintain and improve the same. Such transfer may be initiated by the district court or county board, or such transfer may be initiated by a petition from any person having an interest in the drainage system or

---

[29] Minn. St. 105.78.

[30] Minn. St. 1961, § 112.792.

[31] See, State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191.

by the managers. No such transfer shall be made until the district court or county board has held a hearing thereon. Due notice of the proposed transfer together with the time and place of hearing shall be given by two weeks published notice in a legal newspaper of general circulation in the area involved. All interested persons may appear and be heard. In all proceedings for the repair, maintenance, or improvement the managers shall conform to the provisions of Minnesota Statutes, Chapter 106.

"Subd. 2. Construction of all new drainage systems or improvements of existing drainage systems within the district shall be initiated by filing a petition with the managers of the district."

The statute requires such a hearing only if the petition asks for the Managers to "take over" a county drainage system, but not if the petition asks the Managers to improve any existing drainage system, including a county one. The petition in question clearly did not contemplate nor request the Managers to take over the county drainage system, but to improve it extensively, and the Managers and the Board properly so found and regarded it as a comprehensive watershed project in conformity with the overall plan previously adopted. Moreover, it was not necessary for the Managers to take over the county drainage system before it would have the power to improve it.[32]

■ Appellants argue that the assessments approved by the Managers were invalid because not based upon cash valuation as required by the Minnesota Constitution. Minn. Const. art. 9, § 1, provides:

"* * * Taxes shall be uniform upon the same class of subjects * * *; Provided, that the legislature *may* authorize *municipal corporations* to levy and collect assessments for local improvements upon property benefited thereby without regard to a cash valuation * * *." (Italics supplied.)

---

[32] Minn. St. 112.43, subd. 1(3), empowers the Managers to "[c]onstruct, clean, repair, alter, abandon, consolidate, reclaim or change the course or terminus of *any* public ditch, drain, sewer, river, watercourse, natural or artificial, *within the district*." (Italics supplied.)

The term "municipal corporation" in its broadest and ordinarily accepted sense applies to any public local corporation exercising some governmental functions.[33] This court has interpreted our constitution in this broader sense and has held that this term includes both counties [34] and sewer districts.[35] Likewise, as indicated in Adelman v. Onischuk, *supra,* we hold it includes watershed districts.

■ Appellants argue that the district court erred when it dismissed their appeals except as to allowing two of the more than 1,000 appellants to have the amount of the benefits and damages pertaining to their individually owned land determined by a jury. The validity of this contention must be determined pursuant to Rule 20.01, Rules of Civil Procedure,[36] which provides in part:

"Persons may join in one action as plaintiffs if they assert jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of fact or law common to all of them will arise in the action."

The appeals to the district court encompassed in general two different types of issues—those relating to the legality of the order issued by the Managers approving the project and determining the total amount of assessments and damages, and those relating to the propriety of the benefits assessed and the damages allowed as to the individual landowners.[37] The issues falling into the former category involved identical alleged rights of all the appellants, which arose out of the same proceeding and contained the same issues of fact and law. Under these cir-

[33] City of Olivette v. Graeler (Mo.) 338 S. W. (2d) 827; see, 27A Wd. & Phr. (Perm. ed.) pp. 493 to 494.

[34] Dowlan v. County of Sibley, 36 Minn. 430, 31 N. W. 517.

[35] Mayer v. City of Shakopee, 114 Minn. 80, 130 N. W. 77.

[36] Rule 20.01 is applicable since there is nothing in Minn. St. 1961, §§ 112.792 or 112.80, which is inconsistent with its provisions. See, Rules 1 and 81.01, Rules of Civil Procedure.

[37] The former type of issues was raised by the appeal from the Board's decision and was governed by § 112.792. The latter type of issues was raised by the appeal from the Managers' decision and was governed by § 112.80.

cumstances a joint appeal as to these issues was properly made pursuant to Rule 20.01. The net effect of the district court's action was to resolve these issues adversely to appellants and then to dismiss the appeal dealing with these issues on the merits as to all appellants. It did not commit prejudicial error in taking this action.

As to the latter type of issue, there was no common question of law or fact remaining after the district court's resolution on the merits of the issues falling into the former category, which included the issue of whether the benefits resulting from the project exceeded its costs. Thereafter each of the issues falling into the latter category would necessarily be resolved upon the basis of the particular facts relevant to each individual landowner's property. A joint appeal involving issues of this type is not authorized by Rule 20.01, and the district court did not err in dismissing it.[38] It had no jurisdiction to decide such a joint appeal. The appeals by the two persons which were not dismissed were reserved for a hearing before a jury pursuant to Minn. St. 1961, § 112.80.

Appellants' claim that a joint appeal was authorized by § 112.80 as to the latter type of issue is without merit.[39] Section 112.80, subd. 4, does provide that a person appealing from a determination as to the amount of benefits assessed or damages allowed as to his property has the right to "include and have considered and determined benefits or damages affecting property other than his own." This merely authorizes an appellant, who follows the prescribed procedure, to have a determination made in the same proceedings as to the land of a nonappellant. It does not authorize multiple persons owning separate land to join together and make a joint appeal, as was attempted by appellants in this case.

Affirmed.

---

[38] We do not decide whether the district court acted properly in allowing the appeals of two different landowners to stand, rather than dismissing those of all but one landowner, or even of all.

[39] Minn. St. 112.801, which was not in effect at the time this appeal was made and was not made retroactive, appears to authorize a joint appeal, but we do not decide this question.