488

# IN RE APPEAL FROM AN ORDER OF LAKE VALLEY TOWNSHIP BOARD, TRAVERSE COUNTY, ESTABLISHING A TOWNSHIP ROAD. TOWNSHIP BOARD OF LAKE VALLEY TOWNSHIP v. GORDON LEWIS AND ANOTHER.

234 N. W. 2d 815.

October 10, 1975—No. 45260.

*Rufer, Hefte, Pemberton, Schulze & Sorlie* and *Richard C. Hefte,* for appellants.

*Winter, Lundquist, Sherwood & Athens* and *Marvin E. Lundquist,* for respondents.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

MACLAUGHLIN, JUSTICE.

Appellants, Gordon Lewis and Floyd Byman, appeal from an order of the district court denying their motion for amended findings of fact, conclusions of law, and order for judgment, and denying their motion for a new trial. We affirm.

This action concerns an order of the Lake Valley Town Board establishing a town road. The proposed road is approximately 1,000 feet in length and runs along a section line from a county road to a cemetery. For the past 50 years, access to this cemetery was available along a privately owned road which runs along the same line. Minn. St. 164.07, subd. 1, provides that a town board may establish a town road upon the petition of not less than eight voters of the town who own or occupy real estate within 3 miles of the proposed road. The petition for the establishment of this road was filed with the town clerk of Lake Valley Township on July 5, 1972. The petition was originally sent by one of the supervisors of the town board, Elmer Miller, to one Paul Lindquist who was asked to circulate the petition for signatures. Mr. Lindquist did so, obtaining a total of 12 signatures.

On August 3, 1972, the town board issued an order setting August 21, 1972, as the date for the meeting at which they would consider the petition. On August 10, 1972, appellants received personal service of the order. At the August 21 meeting, appellants appeared specially with their attorney to object to the jurisdiction of the town board. The objection was based on their claim that they had not received personal service of the order at least

10 days before the meeting, as required by Minn. St. 164.07, subd. 2. Appellants then withdrew from the meeting so as not to submit to the board's jurisdiction.

The town board established the road, and appellants appealed to district court, at which time respondents were represented by attorney Marvin Lundquist. Appellants objected to Lundquist's appearance because appellants had consulted with Mr. Lundquist's law partners, Messrs. Sherwood and Winter, in connection with this matter prior to the August 21, 1972, hearing. Mr. Lundquist stated at the pretrial that he had not discussed the matter with his partners and that his firm had received no retainer from appellants. The trial court refused to take action concerning appellants' objection.

Three issues are presented on appeal: (a) Were appellants given sufficient notice of the meeting held by the town board as required by Minn. St. 164.07? (b) Does the fact that one of the supervisors of the town board originally requested that the petition for the establishment of the road be circulated invalidate the final decision of the town board? (c) Should appellants be granted a new trial because of the alleged conflict of interest of respondent's attorney?

■    Minn. St. 164.07, subd. 1, provides that a town road may be established upon the petition of eight voters of the town owning or occupying real estate within 3 miles of the proposed road. Section 164.07, subd. 2, provides that the petition shall be filed with the town clerk who shall present it to the town board which, within 30 days thereafter, shall issue an order describing the proposed road and fixing a time and place when and where the board will meet and act upon the petition. Section 164.07, subd. 2, further provides that "[t]he petitioners shall cause personal service of such order to be made upon each occupant of such land *at least ten days before such meeting* and cause ten day's posted notice thereof to be given." (Italics supplied.) Appellants are occupants entitled to notice, and they assert that they were not given the required 10 days' notice.

Minn. St. 645.15 is the applicable statute governing the computation of time for the purposes of this case:

"Where the performance or doing of any act, duty, matter, payment, or thing is ordered or directed, and the period of time or duration for the performance or doing thereof is prescribed and fixed by law, *such time,* except as otherwise provided in sections 645.13 and 645.14, *shall be computed so as to exclude the first and include the last day* of any such prescribed or fixed period or duration of time. *When the last day of such period falls on Sunday* or on any day made a legal holiday, by the laws of this state or of the United States, *such day shall be omitted from the computation.*" (Italics supplied.)

We have had occasion to apply this statute in several of our decisions. In Jasperson v. Jacobson, 224 Minn. 76, 27 N. W. 2d 788 (1947), the relevant statute provided that "at least 14 days prior to [the hearing], personal service shall be made upon the ward * * *." Minn. St. 525.55. Service was made on June 28, and the hearing was set for July 11. We quoted § 645.15 and stated (224 Minn. 85, 27 N. W. 2d 794):

"* * * This rule for the computation of time is of long standing. [Citations omitted.] Excluding the day of service as the first day of the period, but including the last day or the date of the hearing, plaintiff was in fact given only 13 days' notice and not 'at least 14 days' as required by the statute."

In computing the time period in Jasperson, we excluded the first day, June 28, but included the day of the hearing, July 13.

In State ex rel. Effertz v. Schimelpfenig, 192 Minn. 55, 255 N. W. 258 (1934), the applicable statute called for filing as a candidate at least 20 days before the next primary election. The filing was attempted but refused on May 29. The election was held June 18, and we held the attempted filing to be timely. In so doing we excluded the day of the attempted filing and included the day of the election to arrive at a total of 20 days. See, also,

McAllister v. Independent School Dist. No. 306, 276 Minn. 549, 149 N. W. 2d 81 (1967).

In the instant case, the hearing was held on August 21, 1972, a Monday. Thus, August 21 is to be included in the computation as the last day. Since service was made on August 10, appellants actually had 11 days' notice excluding the day of service, but including the day of the hearing. However, appellants have asked us to conclude that there was less than 10 days' notice by holding that under the facts of this case both August 21, the day of the hearing, and August 20, a Sunday, must be excluded.

Appellants rely on Color-Ad Packaging, Inc. v. Kapak Industries, Inc. 285 Minn. 525, 172 N. W. 2d 568 (1969), in arguing that August 21, the day of the hearing, should be excluded. The plaintiff in Color-Ad had commenced an unlawful detainer action against the defendant by service of a summons on November 5, 1968. The return date of the summons was November 8, 1968, which we held to be "less than the 3 days required by statute."

In calculating the notice period in Color-Ad, the first day, November 5, was properly excluded because of § 645.15. But the last day, November 8, was also excluded by us despite the fact that § 645.15 directs that the last day be included. The opinion is clearly in error, and to the extent that Color-Ad is in conflict with our holding in this case it is overruled.

Since August 21 is included in the calculation as the last day, appellants' argument that Sunday, August 20, should be excluded is incorrect. By the express terms of § 645.15, a Sunday is only to be excluded from the computation if it is the last day. In this case, the last day was Monday, August 21, and not Sunday, August 20. Therefore, August 20 is included in the computation. We hold that the notice as given was timely and sufficient.

■ Appellants' second argument is that participation by the supervisors of the town board in the initial decision to circulate the petition for establishment of the town road must invalidate the order establishing the town road. We disagree. While we find

no case directly in point, one case, Lenz v. Coon Creek Watershed Dist. 278 Minn. 1, 153 N. W. 2d 209 (1967), provides a useful comparison. In Lenz, we were asked to set aside the order of the board of managers of a watershed district establishing an improvements project because the chairman of the county board, which had petitioned for the improvement, and four of the five managers of the board of managers of the watershed district, which had approved the project, owned land affected and benefited by the project. We refused to void the order or disqualify the managers. In that case we delineated the circumstances in which a public official should be disqualified from acting in a decision-making capacity (278 Minn. 15, 153 N. W. 2d 219):

"The purpose behind the creation of a rule which would disqualify public officials from participating in proceedings in a decision-making capacity when they have a direct interest in its outcome is to insure that their decision will not be an arbitrary reflection of their own selfish interests. There is no settled general rule as to whether such an interest will disqualify an official. Each case must be decided on the basis of the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) The nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the other means available, if any, such as the opportunity for review, that serve to insure that the officials will not act arbitrarily to further their selfish interests."

The evidence in Lenz indicated that the officials in question owned a considerable amount of real estate which would be substantially benefited by the improvement. But because there was a good chance that any large improvement would necessarily involve land owned by some of the managers, and because procedural safeguards, including the availability of appeal to district court, were available, we held that there was not sufficient need

to disqualify those officials from acting. We were careful to note, however, that this decision would "not bar a consideration of the interest of such officials as a relevant factor in determining whether their actions were arbitrary, nor a determination that certain proceedings are void because they acted pursuant to this interest." 278 Minn. 16, 153 N. W. 2d 220.

If the direct pecuniary interest involved in Lenz was insufficient to justify disqualification, we conclude that the evidence presented in this case does not require disqualification. Here, the only allegation of misconduct is that one of the town board supervisors was involved in the initial decision to circulate the petition. This fact alone does not disqualify an official from acting in a decision-making capacity and will not invalidate the final order establishing the road. By its very nature, the decision to establish a town road will be of interest to all local citizens including members of the town board of supervisors. And those supervisors are often in the best position to be aware of the need for a town road. There is no evidence to indicate that any of the supervisors had a pecuniary interest in the establishment of this road. The availability of appeal to district court in proceedings such as these will adequately protect occupants of affected land from any possible prejudice.

■ Appellants finally argue that they should be granted a new trial because of the alleged conflict of interest of respondents' attorney. It is true, as appellants contend, that information obtained through the attorney-client relationship is confidential and that an attorney cannot, after obtaining such information, undertake representation of a second client when the information obtained from the first client is so closely connected to the second representation that it would prejudice the first client. And the fact that no money exchanged hands or that no written retainer agreement was entered is irrelevant if such information has been obtained. These rules apply to all members and associates of a law partnership regardless of whether the particular member later involved on behalf of a second client actually conferred

with, and received information from, the first client. However, in the instant case, there is no evidence of any prejudice to appellants as a result of their conference with partners of Mr. Lundquist prior to the August 21 hearing, and we discern no basis whatsoever for the granting of a new trial based upon these facts.

Affirmed.