In the Matter of AMERICAN REPUBLIC INSURANCE COMPANY'S FORMS A-1598, 1-1941, A-2523MN, A-2718MN, A-2745MN, A-2673MN, A-2663MN, A-2645MN, A-2484MN, A-2485MN, A-2481MN, A-2434MN, A-2593MN; American States Insurance Company's Form 9-3322 2-85; Bankers Life and Casualty Company's Forms CR-97N-MN, CR-97N, CR92G-MN, 81T-MN, CR81B-MN (nonqualified); Businessmen's Assurance Company of America's Forms D7089 (D8269), Supplement D8483 (97N), D7026, D7005; Equitable Life Assurance Society of United States' Form CBM 122; and Golden Rule Insurance Company's Forms GRI-H-1.1c, d and e, GRI-HC-1.1.a, b, and c, GRI-H-5.1-23, GRI-H-1.1s BP, and GRI-H-1.2a, b, c and d.

No. C3-88-446.

Court of Appeals of Minnesota.

Aug. 2, 1988.

Review Denied Oct. 19, 1988.

Lawrence T. Hofmann, Robins, Zelle, Larson & Kaplan, Minneapolis, for relator Golden Rule Ins. Co.

Henry J. Price, Jerry Garau, Price & Delaney, Indianapolis, Ind., for relator Golden Rule Ins. Co.

Hubert H. Humphrey, III, Atty. Gen., Gregory P. Huwe, Asst. Atty. Gen., St. Paul, for respondent Dept. of Commerce.

Heard, considered and decided by HUSPENI, P.J., and NORTON and THOREEN *, JJ.

## OPINION

HUSPENI, Judge.

Relator filed a petition for a writ of certiorari seeking review of three orders of the Commissioner of Commerce: the first dated February 25, 1987, the second dated October 29, 1987, and the third dated January 25, 1988. The cumulative effect of the orders is to disapprove certain health and accident insurance policies for which relator had either previously received approval or for which it was currently seeking approval. The Commissioner disapproved the policies on the ground that each contained a nonduplication of benefits provision which was less favorable to an insured than is required by Minn.Stat. § 62A.04, subd. 3(4). Relator argues that the nondu-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

plication provision contained in its policies is expressly authorized and mandated by Minn.Stat. § 62E.06, subd. 1(c)(1)(iii) (1986). Relator also argues that the Commissioner's actions were violative of its due process and equal protection rights. We affirm the order of the Commissioner.

## FACTS

On June 26, 1986, relator filed an application with the department of commerce seeking approval for four policies of accident and health insurance. The policies each contained the following "nonduplication" provision:

### Major Medical Benefits

### Amount Payable

We will pay for services and supplies that qualify as *covered expenses* and are received:

(a) during a calendar year; and

(b) while the *covered person's* insurance is in force under this policy.

The amount payable shall be the lesser of the *basic benefits* or the *alternative benefits.* * * *

"*Basic benefits*" means an amount found by multiplying the *covered expenses* for the calendar year, in excess of the *deductible amount*, by the applicable coinsurance percentage * * *.

"*Alternate benefits*" means 100 percent of the *covered expenses* for the calendar year in excess of the benefits payable therefor under *other plans*.

The total amount payable for each *covered person* under this *policy* will not exceed the *maximum benefit limit* * * *.

(Emphasis in original.)

On July 22, 1986, the policies were disapproved by the department of commerce on the ground that they did not comply with Minn.Stat. § 62A.04, subd. 3(4). (Under section 62A.04, subd. 3 any policy containing nonduplication of benefits provisions less favorable to the insured than the Commissioner approved language of subd. 3(4), shall not be approved by the Commissioner.)

Relator filed a request for a formal hearing on October 28, 1986. In addition to its claim that the nonduplication of benefits provision in its policies was expressly authorized under section 62E.06, relator claimed that the Commissioner's disapproval of the forms was a violation of relator's due process rights because the Commissioner had approved numerous forms with similar language in the past. On December 9 and 10, 1986, a hearing was held before an Administrative Law Judge (ALJ) to determine the validity of the disapproval of relator's forms. The ALJ concluded that, while the nonduplication of benefits provisions was less favorable to an insured than is required by section 62A.04, and while section 62E.06 did not authorize such a provision, disapproval of relator's forms would constitute a denial of its right to due process. The ALJ recommended that relator's forms be approved.

On February 25, 1987, the Commissioner issued an order in which he concluded that relator's policies were violative of section 62A.04 and that section 62E.06 did not authorize relator's nonduplication of benefits provisions. However, finding the charge that relator's due process rights had been violated, the Commissioner (a) approved relator's forms, (b) referred the matter back to the ALJ to determine whether the Department of Commerce had intentionally or purposely discriminated against relator, and (c) commenced proceedings to disapprove all previously approved policies which were in violation of section 62A.04, subd. 3(4), including relator's forms approved in the February 25 order.

On August 14, 1987, a remand hearing was held before the ALJ on the issue of whether the department had purposely and intentionally discriminated against relator. On October 2, 1987, the ALJ issued findings and conclusions which determined that relator was not deprived of its constitutional rights. On October 29, 1987, the Commissioner issued a final order rejecting relator's claim that the department acted in a discriminatory manner.

On April 22, 1987, the Commissioner issued a notice of and an order for a hearing

to seek withdrawal of approval of relator's insurance forms. The matter was heard before a second ALJ on July 7, 1987, with a supplemental hearing on September 23, 1987. On December 8, 1987, this ALJ determined that while the nonduplication of benefits provisions found in relator's insurance policies was less favorable than the statutory language of section 62A.04, subd. 3(4), relator's policies complied with section 62E.06, subd. 1(c)(1)(iii). The ALJ found that "the coordination of benefits provision in Minn.Stat. sec. 62E.06, subd. 1(c)(1), supersedes any duplicate provisions in [section 62A.04]." Consequently, he recommended that relator's forms be approved.

On January 25, 1988, the Commissioner rejected the recommendations of the second ALJ and withdrew approval of relator's insurance forms which contained the nonduplication provision in question. The Commissioner again concluded that the nonduplication provisions of relator's forms must comply with section 62A.04, subd. 3(4), finding in pertinent part that:

> [Relator's] provisions provide less favorable coverage to the insured than the model statutory provision because they result, under certain circumstances, in the insured receiving less money in claims and premium refunds than the insured would receive under the model statutory language. Further, there is substantial likelihood that, if such provisions are permitted, nonduplication provisions would proliferate throughout all insurance policies, and the consumer would be caught between two companies claiming that they do not cover for claims which could have been paid by the other carrier. As a result, the policyholder would be left with no recourse other than litigation.

The Commissioner concluded:

> Minn.Stat. § 62E.06 (1986) does not authorize plans to contain "insurance with other insurers" provisions which violate Minn.Stat. § 62A.04, subd. 3(4) (1986).

## ISSUE

Does Minn.Stat. § 62E.06, subd. 1(c)(1)(iii) supersede the provisions of Minn.Stat. § 62A.04, subd. 3(4)?

## ANALYSIS

Minn.Stat. § 62E.06, subd. 1(c)(1)(iii) (1986) provides:

> A plan of health coverage shall be certified as a number three qualified plan if it *otherwise meets the requirements established by chapters 62A and 62C,* and the other laws of this state, whether or not the policy is issued in Minnesota, and meets or exceeds the following minimum standards:
>
> \*     \*     \*     \*     \*     \*
>
> (c) Covered expenses for the services and articles specified in this subdivision do not include the following:
>
> (1) any charge for care for injury or disease \* \* \* (iii) for which benefits are payable under another policy of accident and health insurance, medicare or any other governmental program except as otherwise provided by law; \* \* \*.

*Id.* (emphasis added). Relator argues that "qualified plans under Sec. 62E.06 of the Minnesota Comprehensive Health Act need not comply with Minn.Stat. § 62A.04, subd. 3(4)." Section 62A.04, subd. 3(4) (1986) sets forth the model provision for instances where an insured has coverage under more than one insurance policy. It states:

> **INSURANCE WITH OTHER INSURERS:** If there be other valid coverage, not with the insurer, providing benefits for the same loss on a provision of service basis or on an expense incurred basis and of which this insurer has not been given written notice prior to the occurrence or commencement of loss, the only liability under any expense incurred coverage of this policy shall be for such proportion of the loss as the amount which would otherwise have been payable hereunder plus the total of the like amounts under all such other valid coverages for the same loss of which this insurer had notice bears to the total like amounts under all valid coverages for such loss, and for the return of such portion of the premiums paid as shall

exceed the pro rata portion for the amount so determined. * * *

Minn.Stat. § 62A.04, subd. 3(4).

Relator concedes that the nonduplication of benefits provision contained in the challenged policies is less favorable to the insured than the Commissioner-approved language of section 62A.04. Relator argues, however, that the policy language meets the requirements of section 62E.06 and, therefore, need not comply with section 62A.04, subd. 3(4). The thrust of relator's argument is that while the introductory sentence of section 62E.06 states a qualified plan must "otherwise [meet] the requirements established by Chapters 62A and 62C," *otherwise*, in this context, means except as Chapter 62E alters those provisions. According to relator, section 62E.06, subd. 1(c)(1)(iii), does alter Chapter 62A's coordination of benefits provision contained in section 62A.04, subd. 3(4).

The intent of Chapter 62E, as the title of the act indicates, was to make certain health care benefits available to all persons in the state and create a comprehensive health care association. According to one source, the purpose was (1) "to broaden the scope of available health coverage to residents of Minnesota through a requirement that employers and insurers make available plans of health coverage which meet the minimum standards of the Act, and (2) to create a mechanism by which otherwise uninsurable persons can obtain health coverage." Stone & Struthers, *The Minnesota Health Insurance Act of 1977 ... A Closer Look,* Bench and Bar, Jan. 1978 at 27, 28. Relator argues that Chapter 62E was a cost containment measure which accomplished its goal by removing the incentive for individuals to overinsure, thus removing the incentive for medical practitioners to overtreat. Ascertaining legislative intent behind Chapter 62E, however, does not necessarily resolve our inquiry. While we find certain merit in relator's argument, we are mindful of our duty to harmonize statutes dealing with the same subject matter whenever possible. *People for Environmental Enlightenment and Responsibility, Inc. v. Minnesota Environmental Quality Council,* 266 N.W.2d 858, 866 (Minn.1978); *Lenz v. Coon Creek Watershed District,* 278 Minn. 1, 11, 153 N.W.2d 209, 217 (1967). With this goal in mind, we conclude the Commissioner acted properly in withdrawing his approval of relator's forms.

■ Section 62E.06, subd. 1(c)(1)(iii) states that a charge for medical care for which benefits are payable under another policy shall not be considered a "covered expense" under a qualified plan. Relator urges that this provision stands alone and replaces the nonduplication of benefits provision of Chapter 62A. We conclude, however, that section 62E.06, subd. 1(c)(1)(iii) does not replace section 62A.04, subd. 3(4), and that we must, instead, look back to this latter provision for a definition of "covered expense." In so doing, we conclude that a covered expense under 62E.06, subd. 1(c)(1)(iii) must be defined as the share of the total loss proportional to its share of the total amount of insurance carried by the insured.

The provisions of Chapter 62A apply to *all* policies which "insure against loss or damage by the sickness, bodily injury or death by accident of the assured or dependents." Minn.Stat. § 60A.06, subd. 1(5)(a) (1986). In such policies, an insurer may, at its option, include a provision entitled "INSURANCE WITH OTHER INSURERS." Minn.Stat. § 62A.04, subd. 3(4). If the insurer wishes to use its own language in lieu of section 62A.04, subd. 3(4), such language must be approved by the Commissioner and may not be *"less favorable in any respect to the insured or the beneficiary."* Minn.Stat. § 62A.04, subd. 2 (1986). Section 62E.06 specifically incorporates Chapter 62A in its requirements for certifying a health plan as a "qualified plan" by stating that such plans must "otherwise meet the requirements established by Chapters 62A and 62C." Such language indicates an intent on the part of the legislature to establish Chapter 62A as a base upon which all policies of insurance sold in Minnesota must be constructed.

Relator's argument would have policies sold as "qualified plans" stand on their

own. We cannot agree. If we were to interpret Chapter 62E as relator suggests, there would be left unresolved the question of which insurer will be liable in those instances in which the insured is covered by two policies with nonduplication of benefits provisions similar to relator's policies. This seems to be the primary concern which led the Commissioner to disapprove relator's policies. Relator's interpretation could put an insured in the position of paying two premiums to two insurers, with neither of them willing to pay out for medical expenses. While relator has suggested such a problem could be resolved by an order of the Commissioner prioritizing the policies, this possibility is speculative at best. Such speculation cannot serve to override the mandate of section 62A.04, subd. 3(4).

Finally, relator argues that its due process and equal protection rights have been violated because policies with nonduplication of benefits provisions similar to relator's have been approved in the past. While this argument would possess merit under different circumstances, it is not persuasive in this instance. The record clearly shows the Commissioner's concern with relator's constitutional guarantees. When the department analyst first indicated relator's policies were not in compliance with Chapter 62A, the Commissioner refused to approve the forms. However, when relator presented evidence to suggest similar forms had been approved in the past, the Commissioner gave approval to relator's forms. The Commissioner then moved to withdraw approval of these forms pursuant to Minn.Stat. § 62A.02, subd. 5 (1986). Other than the Commissioner's interpretation of the two statutes in question, there is no challenge to the procedure by which approval of relator's forms was withdrawn. Additionally, when the Commissioner moved to withdraw approval of relator's forms, it also moved to withdraw approval of all forms containing similar nonduplication provisions which the Commissioner believed to be in violation of Chapter 62A.

## DECISION

Minn.Stat. § 62E.06, subd. 1(c)(1)(iii) does not allow an insurer to offer policies with language less favorable to the insured than the minimum standards of Chapter 62A. As it is clear that relator's policies are less favorable to the insured than required by Minn.Stat. § 62A.04, subd. 3(4), the order of the Commissioner was proper. Further, relator's rights were not violated by the actions of the Commissioner.

Affirmed.