**In re 1989 STREET IMPROVEMENT PROGRAM (117TH STREET), Appellant,**

v.

**DENMARK TOWNSHIP, WASHINGTON COUNTY, MINNESOTA, Respondent.**

No. C7–91–1819.

Court of Appeals of Minnesota.

April 14, 1992.

---

Jack W. Clinton, Tori Jo Wible, Jack W. Clinton, P.A., Cottage Grove, for appellant.

Michael T. Feichtinger, John A. Nelson, St. Cloud, Gregory G. Galler, Stillwater, for respondent.

Carla Heyl, Saint Paul, for amicus curiae League of Minnesota Cities.

Considered and decided by KLAPHAKE, P.J., and FORSBERG and MULALLY,* JJ.

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

## OPINION

FORSBERG, Judge.

This is an appeal from a district court judgment upholding a resolution by the Town Board of Denmark Township, which ordered a street improvement and assessment on 117th Street in the township. Appellant argues that the resolution was invalid because four-fifths of "all" the members of the Town Board did not vote for the resolution.

## FACTS

The facts in this case are undisputed. Several property owners/renters petitioned respondent to establish a private road off of 117th Street. By a vote of 3 to 0 in 1989, the five-member town board adopted a resolution ordering the improvement, pursuant to Minn.Stat. § 429.031 (1988). Two members abstained because they owned property bordering the proposed improvement, and would be assessed part of the cost.

Although not important to this decision, the town board, after awarding a bid for the improvement, adopted the resolution again, by a 4 to 1 vote.

## ISSUES

1. Whether the trial court erred in finding that the township board did not violate the four-fifths vote requirement of Minn. Stat. § 429.031, subd. 1?

2. Whether two members of the township board properly disqualified themselves for a conflict of interest?

## ANALYSIS

1. Minn.Stat. § 429.031, subd. 1 (1988) provides as follows:

Before the municipality awards a contract for an improvement or orders it made by day labor, or before the municipality shall have the power to assess any portion of the cost of an improvement to

pursuant to Minn. Const. art. VI, § 2.

be made under a cooperative agreement with the state or another political subdivision for sharing the cost of making such improvement, the council shall hold a public hearing on the proposed improvement * * *. The hearing may be adjourned from time to time and a resolution ordering the improvement may be adopted at any time within six months after the date of the hearing by vote of a majority of all members of the council when the improvement has been petitioned for by the owners of not less than 35 percent in frontage of the real property abutting on the streets named in the petition as the location of the improvement. *When there has been no such petition, the resolution may be adopted only by vote of four-fifths of all members of the council; provided that if the mayor of the municipality is a member of the council but has no vote only in case of a tie, the mayor shall not be deemed to be a member for the purpose of determining such four-fifths majority vote.* The resolution ordering the improvement may reduce, but not increase the extent of the improvement as stated in the notice of hearing.

(Emphasis added.) A literal interpretation of the statute would seem to require four votes to pass the township resolution. This court, however, is reluctant to give such narrow and literal meaning. In ascertaining the intention of the legislature, the court may presume that "[t]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17 (1990).

There are no Minnesota cases which directly address this issue. There is, however, an Attorney General's opinion which concludes that a legal disqualification is to be treated as a vacancy for the purpose of computing a required majority, at least in those circumstances where a majority of a quorum is sufficient to act.

There are very strong policy reasons for this position as stated in the Attorney General's opinion:

A municipality like any other corporation must function and can only do so through its officers. * * * As the situation stands in the instant case, if relator's position is to be sustained, it means that the minority has power to prevent the filling (of vacancies). Carried to its logical extreme, if the council were reduced in number through deaths, resignations, or removals to 15 or 16 members, one or two obstructionists could defeat any action. If the charter requirement were for unanimous choice of a successor, it would mean that upon the death of an alderman no successor could be appointed even where all survivors were favorable to such choice. * * * Public policy demands that a majority of those remaining should have power to act. This majority should be computed upon the basis of membership as it exists after the vacancy, not upon the total number elected in the first instance.

Op.Atty.Gen. 471–M (October 30, 1986) (quoting *State v. Hoppe,* 194 Minn. 186, 196–97, 260 N.W. 215, 220 (1935)). Moreover, it would not be good public policy to encourage a council member who would otherwise be disqualified due to a conflict of interest, to vote on the matter merely to ensure that the statutory vote requirement is met. Citizens may mistrust, or become cynical of, the government where there is a strong appearance of impropriety by a member voting in such a situation. Where there is a choice, city officials should avoid actions which may appear tainted of impropriety, even though they are legal.

Therefore, we hold that "members," as used in Minn.Stat. § 429.031, means only those qualified to vote.

■ 2. The next question is whether the two members who abstained from voting were legally disqualified. Generally, public officials are disqualified from participating in proceedings in a decision-making capacity when they have a direct interest in the proceedings' outcome. *Lenz v. Coon Creek Watershed Dist.,* 278 Minn. 1, 15, 153 N.W.2d 209, 219 (1967); *see E.T.O., Inc. v. Town of Marion,* 375 N.W.2d 815, 819 (Minn.1985). The purpose of this rule is to ensure that a decision will not be an arbitrary reflection of an official's own selfish interests. *Lenz* at 15, 153 N.W.2d at 219. There is no settled rule about

whether a conflict of interest will disqualify an official. Therefore,

> [e]ach case must be decided on the basis of the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) The nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the other means available, if any, such as the opportunity for review, that serve to ensure that the officials did not act arbitrarily to further their selfish interests.

*Id.*

Both members had a conflict of interest in the improvement. One member, Mr. Schneider, was assessed $10,965; the other member, Mr. Smith, $5,482. Certainly, the interests in the property would give the appearance of impropriety, and that should allow a public official to abstain and not be second-guessed by a court as to the amount involved.

### DECISION

The trial court properly determined that the township's 3–0 vote satisfied the four-fifths vote requirement set forth in Minn. Stat. § 429.031.

Affirmed.