STATE OF MINNESOTA

IN SUPREME COURT

A22-1163

Court of Appeals                                                    Moore, III, J.
                                                   Took no part, Hennesy, Gaïtas, JJ.

In the Matter of Keystone Township, et al.,

        Appellants,

vs.                                                          Filed:  May 14, 2025
                                                          Office of Appellate Courts
Red Lake Watershed District,

        Respondent,

Paul Novacek, et al.,

        Respondents.

_____

Mark A. Grainger, Matt A. Paulson, Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, North Dakota, for appellants.

Delray L. Sparby, Ihle Sparby & Haase PA, Thief River Falls, Minnesota, for respondent Red Lake Watershed District.

Gerald W. Von Korff, John C. Kolb, Rinke Noonan, Ltd., Saint Cloud, Minnesota, for respondents Paul Novacek, et al.

Louis N. Smith, Charles B. Holtman, Smith Partners PLLP, Minneapolis, Minnesota, for amici curiae Minnesota Association of Watershed Districts and Red River Watershed Management Board.

_____

1

1.      The Red Lake Watershed District was authorized to conduct drainage improvement proceedings for Polk County Ditch 39—a ditch under the drainage authority of the Polk County Board of Commissioners—because, under Minn. Stat. § 103D.625 (2024) and our decision in *Lenz v. Coon Creek Watershed District*, 153 N.W.2d 209 (Minn. 1967), a watershed district need not first take over the ditch from the county before the watershed district conducts improvement proceedings for the ditch.

2.      The Red Lake Watershed District was authorized to conduct the proceedings without the involvement of county officials, insofar as the involvement of county officials would be inconsistent with the Watershed Law, Minn. Stat. ch. 103D (2022), and none of appellants' other alleged procedural defects affected the Red Lake Watershed District's authority to establish the improvement project over Ditch 39.

Affirmed.

O P I N I O N

MOORE, III, Justice.

We are presented here with a dispute over the application of the statutes that govern improvement projects for drainage ditches. Particularly, we are tasked with determining whether the Red Lake Watershed District had the authority to conduct proceedings to improve a drainage ditch located geographically within the District but under the drainage authority of the Polk County Board of Commissioners. Additionally, we must consider whether the improvement proceedings conformed to statutory requirements.

After Keystone Township and several landowners challenged the order of the Red Lake Watershed District establishing the improvement project, the district court granted summary judgment in favor of the challengers, ruling that the District did not have the authority to order the improvement because the District was not the drainage authority. The court of appeals reversed, and we accepted review.

We conclude that the Red Lake Watershed District was authorized to conduct the improvement proceedings and did not fail to conform to statutory requirements in a way that invalidated jurisdiction over the proceedings. Accordingly, we affirm the decision of the court of appeals.

**FACTS**

Respondent[1] Red Lake Watershed District (the District), spans 5,990 square miles across 10 counties of northwest Minnesota, including a large portion of Polk County. Since the District was established in 1970, it has assumed control over several drainage systems that were transferred from the oversight of county or joint county authorities.[2]

---

[1]    This case involves several appellants and respondents. The appellants are Keystone Township, Owen Peterson, Lamont Peterson, Curt Vanek, Mark Holy, Charlene Holy, John Giese, James Pulkrabek, Peter Giese, J-P, Inc., David Straus, Dan Driscoll, Tim Kozel, Peter Cieklinski, Tom Kozel, Curtis Amundson, Suzie Larson, Tami Neilson, Donna Driscoll, Stanley Hotvedt, Norma Lacano Hotvedt, Charles Hotvedt, Marvin Zak, Dorothy Jerik, and Brad Owens.
      The respondents are Red Lake Watershed District, Kyle Novacek, Rebecca Novacek, Paul Novacek, Ronald Novacek, Patricia Novacek, Douglas A. Peterson, Glenn H. Hanson, and Folson Farm Corporation.

[2]    Minnesota law assigns water drainage management powers to entities known as drainage authorities, which may be a county board of commissioners, a joint county board,

3

Polk County Ditch 39 (Ditch 39) lies entirely within the portion of Polk County that falls inside the geographical boundaries of the District, but Polk County has never transferred authority for the ditch to the District. Instead, at the time of the proceedings relevant to this case, Ditch 39 remained under the drainage authority of the Polk County Board of Commissioners. *See generally* Minn. Stat. § 103E.011 (2024).

In 2017, owners of land in the drainage area of Ditch 39 (some of whom, along with the District, constitute the respondents in this case) filed a petition with the Red Lake Watershed District Board of Managers to improve the ditch. At the time, the Polk County Board of Commissioners was the drainage authority for Ditch 39. The petition requested that, upon completion of the improvement, the operation and maintenance of the ditch be "turned over" to the District.

The proposed improvement would increase the capacity and length of Ditch 39 to capture overflow from a larger ditch, Polk County Ditch 66 (Ditch 66), which was also under the drainage authority of the Polk County Board of Commissioners. The following image shows the relative locations of both ditches:

---

or a board of managers of a watershed district. *See* Minn. Stat. § 103E.005, subds. 4, 9 (2024).



Ditch 39 = Yellow Highlight
Ditch 66 = Green Highlight

The goal of the project was to make drainage more efficient for both Ditch 39 and Ditch 66. These efficiencies would benefit the property surrounding both ditches, and owners of these properties would be assessed benefits to cover the cost of the improvements. *See* Minn. Stat. § 103E.315 (2024).

The District accepted the petition, along with a bond from the petitioners, and initiated proceedings to consider the improvement project. It directed reports to be made on the proposed project. Before the final hearing on July 24, 2020, the District took steps to notify property owners as required by Minn. Stat. § 103D.741. These steps included publishing notice on July 8, July 15, and July 22, 2020, and mailing notice on July 10, 2020. Ditch 66 was assessed 8.1 percent of the cost of improvement by the District, which

5

amounted to $170,184. Although the owners of property benefited directly by Ditch 39 had been involved with the project early on, the District mailed notice to property owners benefited by Ditch 66 only 14 days before the final hearing. At the final hearing, the District found that the proposed project met all the statutory requirements for approval and ordered that the improvement be established.

Shortly after the District promulgated its order, appellant Keystone Township, along with several appellant property owners who would be assessed benefits for Ditch 39 (collectively, Keystone), filed a notice of appeal with the Polk County District Court, under Minn. Stat. § 103E.095 (2024):

> A party may appeal an order made by the board . . . to the district court . . . . If the court finds that the order appealed is lawful and reasonable, it shall be affirmed. If the court finds that the order appealed is arbitrary, unlawful, or not supported by the evidence, it shall make an order, justified by the court record, to take the place of the appealed order, or remand the order to the board for further proceedings.

Polk County received notice of the district court appeal but did not participate in the appeal and is not a party here.

Keystone claimed that jurisdiction of Ditch 39 was never transferred to the District from Polk County and that procedural defects in the proceedings also invalidated the District's order. The parties agreed to a set of stipulated facts, which included the fact that "[p]rior to the filing of the petition (and bond) to improve [Ditch 39] with the Red Lake Watershed District Board of Managers, [Ditch 39] was under the jurisdiction of Polk County and the Polk County Board of Commissioners was the Drainage Authority." Keystone moved for summary judgment.

6

The district court granted Keystone's motion, concluding that the District did not have jurisdiction because Polk County was the drainage authority and had not transferred authority over Ditch 39 to the District before the petition was filed. The district court ruled that the statutory procedures required that the petition be filed with the county auditor and then presented by the auditor to the county board. *See* Minn. Stat. § 103E.215, subds. 4(b), 5 (2022). Accordingly, the district court declared that the District's final order was "void for lack of authority to establish the improvement." Because the district court concluded that the District lacked authority to establish the improvement, the district court did not consider the alleged defects in the improvement proceedings.

Respondents appealed, and the court of appeals reversed the district court's decision. *Keystone Twp. v. Red Lake Watershed Dist.*, 989 N.W.2d 897 (Minn. App. 2023). The court of appeals concluded that: (1) the Watershed District had authority over the ditch-improvement petition; and (2) the improvement proceedings "substantially conformed" to the statutory requirements and that "minor, nonprejudicial deviations from prescribed procedure" did not invalidate the District's decision. *Id.* at 906, 909. Keystone sought review from this court, which we granted.

## ANALYSIS

This case comes to us on appeal from the district court's grant of summary judgment in favor of Keystone. The relevant facts are not disputed. "We review summary judgment decisions de novo to determine if the district court erred in its application of the law." *City of Circle Pines v. County of Anoka*, 977 N.W.2d 816, 822 (Minn. 2022). Matters of statutory interpretation present questions of law, which we similarly review de novo. *Id.*

7

We begin with a discussion of the statutory framework to provide the context for the parties' dispute. The Minnesota Legislature has enacted a comprehensive statutory scheme to manage all aspects of water management throughout the state. This scheme is collectively known as the Water Law, and is codified at chapters 103A–G of the Minnesota Statutes. Minn. Stat. § 103A.001 (2024). Two chapters of the Water Law are particularly relevant here: chapter 103D (2022), the Watershed Law, and chapter 103E (2022), the Drainage Code.

First, we consider the Watershed Law. The Watershed Law sets forth the general purposes of watershed districts, how watershed districts are established and managed, and how proceedings for projects of the watershed district must be conducted. *See* Minn. Stat. §§ 103D.201, .205, .311, .601–.745. Originally enacted by the Legislature in 1955,[3] the Watershed Law provides for the creation of watershed districts to "conserve the natural resources of the state by land use planning, flood control, and other conservation projects by using sound scientific principles for the protection of the public health and welfare and the provident use of the natural resources." Minn. Stat. § 103D.201, subd. 1. The Watershed Law "shall be construed and administered so as to make effective [these] purposes." Minn. Stat. § 103D.501.

Second, we consider the Drainage Code. The Drainage Code specifically addresses the powers of drainage authorities and provides the rules for drainage proceedings,

---

[3] Act of April 23, 1955, ch. 799, 1955 Minn. Laws 1232, 1232–58 (codified as amended at Minn. Stat. §§ 112.34 et. seq).

8

including improvement proceedings. The Drainage Code defines terms used throughout that chapter, Minn. Stat. § 103E.005, and contains procedures for drainage projects that closely parallel the procedures set forth for watershed districts. *Compare* Minn. Stat. §§ 103E.202–.345, *with* Minn. Stat. §§ 103D.601–.745 (providing similar procedures for filing a petition, generating an engineer's report, and conducting a final hearing). The Drainage Code predates the Watershed Law (although it has been amended to accommodate it) and mostly deals with the authority of counties and municipalities to manage drainage projects. *See* Al Kean, Minn. Bd. of Water & Soil Res. *Minnesota Drainage Law, A Chronological Summary of Key Statute Titles, Numbers and Associated Headings* 1–2 (2018). In examining the Watershed Law and the Drainage Code together, the Legislature has directed that, wherever the Watershed Law refers to the Drainage Code, the provisions of the Drainage Code should, "if consistent," be read into the Watershed Law. Minn. Stat. § 103D.505.

Before the Watershed Law was enacted in 1955, many drainage systems were controlled directly by local government entities. *See* John Helland, Minn. House of Representatives Rsch. Dept., *Drainage Issues* 1–2 (2002). Accordingly, the Drainage Code provides a procedure that "must be used to improve an established and constructed drainage system." Minn. Stat. § 103E.215, subd. 1. Under this procedure, an improvement petition involving an existing drainage system must be filed with the county auditor, who in turn must present it to the county board or the joint county drainage authority for consideration. *Id.*, subds. 4(b), 5.

But under the Watershed Law, once a watershed district is established under Minn.

9

Stat. §§ 103D.205–231, it has the power to "construct, clean, repair, alter, abandon, consolidate, reclaim, or change the course or terminus of any public ditch, drain, sewer, river, watercourse, natural or artificial, within the watershed district." Minn. Stat. § 103D.335, subd. 8. Additionally, a watershed district may "take over when directed by a drainage authority all . . . county drainage systems within the watershed district, together with the right to repair, maintain, and improve them." *Id.*, subd. 15.

The statute that lies at the heart of this dispute, Minn. Stat. § 103D.625, governs the processes for a watershed district to assume responsibilities for existing drainage systems within the district, for the repair and improvement of assumed systems, and for the construction of new systems or improvement of existing systems within the district. Under subdivision 1 of that statute, to "take over" a drainage system from a county, watershed districts must abide by certain procedures. Minn. Stat. § 103D.625, subd. 1.[4] Under

---

[4] Minnesota Statutes section 103D.625, subdivision 1, provides in full:

(a) The managers [of a watershed district] shall take over a joint county or county drainage system within the watershed district and the right to repair and maintain the drainage system if directed by a joint county drainage authority or a county board. The transfer may be initiated by:

(1) the joint county drainage authority or county board;

(2) a petition from a person interested in the drainage system; or

(3) the managers.

(b) The transfer may not be made until the joint county drainage authority or county board has held a hearing on the transfer. Notice of the proposed transfer with the time and place of hearing must be given by two weeks' published notice in a legal newspaper of general circulation in the area where the transfer is to occur. All interested persons may appear and be heard.

10

subdivision 2, once a watershed district takes over in whole or in part a joint county or county drainage system, it becomes "part of the works of the watershed district to the extent taken over."  Minn. Stat. § 103D.625, subd. 2.  And under subdivision 3, "[a]fter the transfer is ordered, all proceedings for repair and maintenance must conform to chapter 103E, except for repairs and maintenance done pursuant to section 103D.621, subdivision 4," which governs drainage systems in metropolitan areas.  Minn. Stat. § 103D.625, subd. 3; *see also* Minn. Stat. § 103D.621.

Because there is no dispute that when the respondent property owners filed a petition with the District, the District had not "take[n] over" the county drainage system under the procedures set forth in subdivision 1, the focus of this case is primarily on subdivision 4 of section 103D.625.  That subdivision provides that "[c]onstruction of new drainage systems or improvements of existing drainage systems *in the watershed district* must be initiated by filing a petition with the managers [of the watershed district]."  (Emphasis added.) Proceedings for construction or improvements of drainage systems "in the watershed district must conform to chapter 103E, except for repairs and maintenance done pursuant to section 103D.621, subdivision 4."  *Id.*

To resolve this dispute over control of Ditch 39, we must consider two issues: first, whether, under the laws governing improvement proceedings, the District was authorized

---

(c) After the hearing, the joint county drainage authority or county board shall order the watershed district to take over the joint county or county drainage system, unless it appears that the takeover would not serve the purpose of this chapter and would not be for the public welfare or be in the public interest.

11

to improve Ditch 39 without having "taken over" that ditch from the county; and second, whether the District's improvement proceedings involving Ditch 39 conformed to statutory procedural requirements. We address each issue in turn.

I.

We first consider whether, under Minn. Stat. § 103D.625, subd. 4, a watershed district has the authority to conduct improvement proceedings for a ditch that lies within the geographical boundaries of the watershed district but falls under the drainage authority of a county board of commissioners. There is no dispute that Polk County was the drainage authority for Ditch 39 at the time the improvement petition was filed. At issue is whether the District had jurisdiction[5] over the petition to improve Ditch 39.

To improve the ditch, respondent property owners filed a petition with the District, but not with Polk County. Although Polk County is not a party here and has not challenged the District's authority to conduct the improvement proceedings, appellants nevertheless argue that the District lacked jurisdiction because it had not "taken over" Ditch 39. The District counters that it had jurisdiction over the improvement petition despite Polk

_____

[5]     The word "jurisdiction" does not appear in section 103D.625. But it is frequently used throughout the Drainage Code and is central to the definition of a "drainage authority." *See* Minn. Stat. § 103E.005, subd. 9 (" 'Drainage authority' means the board or joint county drainage authority having jurisdiction over a drainage system or project."). As the court of appeals noted, jurisdiction is a "useful analogy" to discern the limits of statutorily-delegated powers. *Keystone*, 989 N.W.2d at 902 n.3. Similarly, we use "jurisdiction" here to refer to the scope of delegated state authority to manage water resources, as derived from "a government's general power to exercise authority over all persons and things within its territory." *Jurisdiction, Black's Law Dictionary* (12th ed. 2024).

12

County's status as the drainage authority when the improvement petition was filed. The District relies on Minn. Stat. § 103D.625, subd. 4, which provides that "improvements of existing drainage systems in the watershed district must be initiated by filing a petition with the managers" of the watershed district. The question here is whether Minn. Stat. § 103D.625, subd. 4, applies when the watershed district has not yet "take[n] over" the county drainage system under the transfer procedure specified in Minn. Stat. § 103D.625, subd. 1.

We answered this question in our decision in *Lenz v. Coon Creek Watershed District*, 153 N.W.2d 209 (Minn. 1967). In *Lenz*, we considered an improvement petition filed with a watershed district, which had not first "take[n] over" a drainage system that was under the authority of a county. *Id.* at 220–21. There, the county itself had filed the improvement petition with the watershed district, and the petition was subsequently challenged by property owners who opposed the improvement. *Id.* at 212. We addressed whether the county must first conduct a transfer hearing (under what is now Minn. Stat. § 103D.625, subd. 1) before the watershed district could conduct the improvement proceedings. *Id.* at 220. Concluding that a transfer hearing was not required, we stated:

> The statute requires such a hearing only if the petition asks for the Managers to "take over" a county drainage system, but not if the petition asks the Managers to improve any existing drainage system, including a county one. The petition in question clearly did not contemplate nor request the Managers to take over the county drainage system, but to improve it extensively, and the Managers and the Board properly so found and regarded it as a comprehensive watershed project in conformity with the overall plan previously adopted.

*Id.* at 220–21. We specifically determined that "it was not necessary for the Managers to

take over the county drainage system before [the watershed district] would have the power to improve it." *Id.* at 221.

To support this determination, we cited the statutory language that authorizes watershed districts to alter public ditches within the watershed district. *See* Minn. Stat. § 112.43, subd. 1(3) (1967) (repealed 1990), *cited in Lenz*, 153 N.W.2d at 221 n.32. That language was recodified at Minn. Stat. § 103D.335, subd. 8, which provides that "[t]he managers may construct, clean, repair, alter, abandon, consolidate, reclaim, or change the course or terminus of any public ditch, drain, sewer, river, watercourse, natural or artificial, within the watershed district."

We consider our prior interpretations of a statute "in reviewing subsequent disputes over the meaning of the statute." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012). "The doctrine of stare decisis has special force in the area of statutory interpretation because the Legislature is free to alter what we have done." *Schuette v. City of Hutchinson*, 843 N.W.2d 233, 238 (Minn. 2014). Accordingly, "[w]e have long held that '[w]hen a judicial interpretation of a statute has remained undisturbed, it becomes part of the terms of the statute itself.' " *Else v. Auto-Owners Ins. Co.*, 980 N.W.2d 319, 329 (Minn. 2022) (quoting *Wynkoop v. Carpenter*, 574 N.W.2d 422, 426 (Minn. 1998)).

The Legislature has amended section 103D.625 and other provisions of the Water Law several times since our decision in *Lenz*, but the language material to that decision has

14

not changed in any way that conflicts with our holding in that case.[6] Under these circumstances, we presume that the Legislature intended for our interpretation in *Lenz* to be placed upon the current statutory language. *See Kingbird v. State*, 973 N.W.2d 633, 640 (Minn. 2022) ("In ascertaining legislative intent, there is a presumption that if we have already construed language of a Minnesota statute, then later laws using that same language within the same subject matter are bound to that construction of the language."); *see also* Minn. Stat. § 645.17(4) (2024) (stating the presumption that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language"). In *Lenz*, we concluded that a transfer hearing was not a prerequisite to a watershed district establishing an improvement project. 153 N.W.2d at 220–21 (holding that "it was not necessary for the Managers to take over the county drainage system before it [sic] would have the power to improve it"). Here, we follow our precedent in *Lenz* and conclude that Minn. Stat.

---

[6] *Compare* Minn. Stat. § 112.65, subds. 1–2 (1967) (repealed 1990) ("The managers of a district shall take over when directed by the district court or county board any judicial or county drainage system within the district, together with the right to repair and maintain the same. . . . Construction of all new drainage systems or improvements of existing drainage systems within the district shall be initiated by filing a petition with the managers of the district."), *with* Minn. Stat. § 103D.625 (2022) ("The managers shall take over a joint county or county drainage system within the watershed district and the right to repair and maintain the drainage system if directed by a joint county drainage authority or a county board. . . . A joint county or county drainage system that is taken over in whole or in part is part of the works of the watershed district to the extent taken over. . . . After the transfer is ordered, all proceedings for repair and maintenance must conform to chapter 103E . . . . Construction of new drainage systems or improvements of existing drainage systems in the watershed district must be initiated by filing a petition with the managers. The proceedings for the construction or improvement of drainage systems in the watershed district must conform to chapter 103E . . . .").

§ 103D.625, subd. 4, allows a watershed district to conduct improvement proceedings over a ditch without first taking over control from the county. *See* Minn. Stat. § 103D.625, subd. 1.

## II.

Because we conclude that the District had jurisdiction to conduct the improvement proceedings involving Ditch 39, we must next address Keystone's alternative argument: that the District's order should be nullified because the District failed to strictly comply with the provisions of the Drainage Code.

"[D]rainage proceedings in this state are purely statutory and their validity depends upon a strict compliance with the provisions of the statute by which they are regulated and controlled." *Hagen v. County of Martin*, 91 N.W.2d 657, 660 (Minn. 1958). Under Minn. Stat. § 103D.625, subd. 4—the statute that gave the District jurisdiction to conduct the improvement proceedings—"proceedings for the construction or improvement of drainage systems in the watershed district must conform to chapter 103E."

*Hagen* requires "strict compliance" with the provisions of a controlling statute; here, the sole *controlling* statute is Minn. Stat. § 103D.625, subd. 4, which itself directs the District to "conform" its proceedings "to chapter 103E" in general. The Drainage Code itself is not the controlling statute (and is, in fact, a compilation of statutes) upon which the validity of the District's proceedings depends. Strict compliance with the *actual* controlling statute (Minn. Stat. § 103D.625, subd. 4), then, requires only that the District "conform" its proceedings to the Drainage Code. We agree with the court of appeals that conformity "connotes alignment, not literal compliance." *Keystone*, 989 N.W.2d at 907.

16

Conformity—not strict compliance—is therefore the standard of adherence to which the District must cleave in observing the individual procedural requirements of the Drainage Code. This is further confirmed by section 103D.505 of the Watershed Law, which provides that "[i]f this chapter refers to particular sections of the drainage laws of this state, the sections and provisions shall, *if consistent with this chapter*, be treated and construed as having the same effect, so far as the provisions of this chapter are concerned, as though set forth in this chapter." Minn. Stat. § 103D.505 (emphasis added). Strict compliance with the Drainage Code by the District is not required, and the Drainage Code's requirements must give way when they are inconsistent with the Watershed Law.

A.

We first address Keystone's claim that the District failed to adequately involve the County in its improvement proceedings. Specifically, Keystone contends that under the Drainage Code the improvement petition should have been filed with the Polk County Auditor, that the improvement petition should have been presented to the Polk County Board of Commissioners, and that a bond should have been filed with the Polk County Auditor.[7]

Under the Drainage Code, an improvement petition must be filed with the county auditor, who presents it to the county's board of commissioners. Minn. Stat. § 103E.215,

---

[7] Keystone also alleges that the Polk County Auditor needed to certify the petition, but this requirement applies only to petitions to *establish* a watershed district, so it is inapplicable here. Minn. Stat. § 103D.211 ("An auditor that receives a copy of an establishment petition . . . must certify the number of petitioners that are resident owners and file the certification with the board.").

17

subds. 4(b), 5. The petitioner must also file a bond with the county auditor. Minn. Stat. § 103E.202, subd. 4. By contrast, the Watershed Law requires that an improvement petition be filed with the watershed district's board of managers, Minn. Stat. § 103D.701(1), and that a deposit or bond be filed with the managers. Minn. Stat. § 103D.705, subd. 3.

The parallel nature of the procedures for improvement petitions puts the requirements to notify county officials under the Drainage Code at odds with the provisions of the Watershed Law. For example, if the requirements of both chapters need to be followed, property owners petitioning for an improvement would need to file an improvement petition twice: once with the county auditor and again with the watershed district. These property owners would also have to file bonds with the county *and* with the watershed district, increasing the effective cost of bringing an improvement petition for any drainage system located in both a county and a watershed district. If these provisions are not technically in direct conflict, they are inconsistent insofar as the duplicative involvement of county officials hampers the directive to make effective a watershed district's purpose. *See* Minn. Stat. § 103D.501 ("This chapter shall be construed and administered so as to make effective the purposes [of watershed districts].").

Considering these provisions together, we conclude that the District was permitted to conduct the proceedings with only District officials—and without the involvement of county officials—insofar as the involvement of county officials would not be "consistent with" the Watershed Law. Minn. Stat. § 103D.505. Here, "strict compliance" is required as to the Watershed Law; to "conform" with the Drainage Code as Minn. Stat. § 103D.625,

18

subd. 4 commands does not require adhering to Drainage Code requirements that are inconsistent with the Watershed Law, *see* Minn. Stat. § 103D.505. Our conclusion that the District can still conform to the Drainage Code by effectively substituting its own officials in place of county officers dispenses with several of Keystone's other procedural challenges. The alleged instances of noncompliance with the statutory procedures related to County involvement—the failures to file the improvement petition with the Polk County Auditor, to present the improvement petition to the Polk County Board, and to file a bond with the Polk County Auditor—are all excused by our conclusions that the District was authorized to conduct the improvement proceedings and that the Legislature did not intend to require parallel, duplicative proceedings in both the County and the District.

We note that the lack of harmony between the text of the Drainage Code and the text of the Watershed Law—and the primacy we give here to the Watershed Law—seems to treat the Drainage Code's explicit directives to involve county officials in improvement proceedings for ditches under the drainage authority of the county as merely permissive. But as we observed in *Lenz*, "whatever interpretation is given" to the Watershed Law, "it will necessarily be inconsistent with some provision of the Drainage Code." 153 N.W.2d at 217 (stating further that we should not assume "the nonexistence of inconsistent procedures"). Our analysis here is guided by and only underscores this observation—made over 50 years ago—regarding the somewhat contradictory statutory scheme the Legislature has enacted to govern drainage matters throughout the state. Under the circumstances here, when faced with the somewhat contradictory scheme, the "strict compliance" required as to the Watershed Law is what necessarily controls. Conformity with the Drainage Code

19

requires alignment, but Minn. Stat. § 103D.505 is clear that the Drainage Code must cede when inconsistencies with the Watershed Law arise.

We recognize, though, that under our holding, county officials may be effectively omitted from the improvement process, creating a scenario where an improvement is made to a county-operated ditch without the county's involvement or assent. To allay this fear, the District points out that it must—and did—provide notice to the County before both the preliminary and final hearings. *See* Minn. Stat. §§ 103E.261, subd. 1 (requiring preliminary hearing notice to "political subdivisions likely to be affected by the proposed drainage project"), 103E.325, subd. 3 (requiring final hearing notice to "auditors of affected counties"). And here, at least, the County expressed no concerns about the actions of the District. Additionally, the practice of substituting county officials for equivalent district officials appears to be the status quo for improvement proceedings within watershed districts.

Still, we acknowledge Keystone's argument that under our interpretation, parties petitioning for the improvement of a ditch that falls under the drainage authority of a county would be required to: (1) "read the code"; (2) "disregard the requirement that it be filed with the County Auditor"; and (3) "somehow determine the legislative intent was to actually file the petition—not with the County Auditor as expressly stated in the code— but with an official appointed within the staff of the Watershed District." As we have often remarked, should the Legislature wish to exercise its "prerogative to reexamine" the interaction between the statutes considered here, it may do so. *State v. Khalil*, 956 N.W.2d 627, 642 (Minn. 2021) (citation omitted) (internal quotation marks omitted). As this case

20

demonstrates, county drainage authorities, watershed districts, and Minnesotans relying on functioning drainage systems may be well-served by the Legislature doing just that.

B.

Keystone alleges three additional defects that, in its view, caused the District to lose jurisdiction over the improvement proceedings. According to Keystone, the District failed to: (1) provide a property owners' report to the Ditch 66 property owners who would be affected by the planned improvement to Ditch 39; (2) timely prepare the property owners' report; and (3) timely provide final hearing notice to all parties affected by the proposed improvement. We address each of these challenges in turn, and we conclude that each lacks merit.

First, the District did not need to provide a property owners' report to the Ditch 66 property owners, because the District assessed the benefits of the improvement project to Ditch 66 itself, not the individual Ditch 66 property owners. Keystone rests its argument entirely upon Minn. Stat. § 103E.323, subd. 1, which provides that "[w]ithin 30 days after the viewers' report is filed, the auditor must make a property owners' report from the information in the viewers' report showing for each property owner benefited or damaged by the proposed drainage project," certain specified information. Keystone argues that the Ditch 66 property owners are "benefited or damaged by the proposed drainage project," and therefore under the language of subdivision 1, a property owners' report needed to be made to the Ditch 66 property owners' with their information. But Keystone ignores that same statutory provision requires that the property owners' report be made "from the

21

information in the viewers' report."[8]  Minn. Stat. § 103E.323, subd. 1.  And the viewers' report generally describes each lot or tract that will be benefited by the improvement project and the amount that each lot or tract will be benefited.  Minn. Stat. § 103E.321, subd. 1.  But when an improvement project "furnishes an outlet to an existing drainage system" (as the improvement to Ditch 39 did to Ditch 66), the viewers need not assess the benefits on a property-by-property basis for the property owners receiving the outlet benefit.  Minn. Stat. § 103E.315, subd. 6(a).  Rather, the viewers can assess "a single amount as an outlet benefit to the existing drainage system."  *Id.*, subd. 6(a)(2).  When the cost of the improvement must ultimately be paid, the lien for the assessment to the existing drainage system must be "prorated on all property benefited by the existing drainage system in proportion to the benefits determined for the existing drainage system."  *Id.*, subd. 6(b).

Here, the District's viewers opted to assess a single amount of $200,000 to Ditch 66 to account for the outlet benefit that Ditch 66 would enjoy because of the improvements to Ditch 39.  As a result, the viewers' report did not list or identify the individual Ditch 66 property owners that would benefit from the improvement to Ditch 39.  This meant that— because the property owners' report is made "from the information in the viewers' report"—when it came time to generate and mail the property owners' report, the individual Ditch 66 property owners were not listed as "property owner[s] benefited or damaged by the proposed drainage project."  Minn. Stat. § 103E.323, subd. 1.  Keystone's

---

[8]    The "viewers" are "three disinterested residents of the state qualified to assess benefits and damages" that are appointed by the drainage authority.  Minn. Stat. § 103E.305, subd. 1.

argument that Minn. Stat. § 103E.323, subd. 1 required mailing a property owners' report to the Ditch 66 property owners thus fails.

Second, we conclude that although the property owners' report was not prepared within the timeframe provided by statute, appellants have not shown that they were "directly affected" by the untimeliness of the report, as required by Minn. Stat. § 103E.051(a). Property owners' reports must be made within 30 days of the filing of the viewers' report, Minn. Stat. § 103E.323, subd. 1, but the property owners' reports here were dated March 24, 2020, which is more than 60 days after the viewers' report was filed on January 23, 2020. Keystone is correct that the District did not conform to the timing requirement of section 103E.323. But Keystone does not specify how any of the appealing parties were "directly affected" by the timing of the property owners' report. And Minn. Stat. § 103E.051(a) requires that "[a] party may not take advantage of an error in a drainage proceeding or an informality, error, or defect appearing in the record of the proceeding or construction, unless the party complaining is directly affected." We conclude that this procedural failure is insufficient to invalidate the District's establishment of the improvement project. *See In re McRae*, 100 N.W. 384, 385 (Minn. 1904) (concluding that a statute directing a county board of commissioners to appoint viewers within a specified time "must be deemed directory," and the failure to strictly comply with the statute did not invalidate the proceedings involving the establishment of a drainage ditch).

Finally, we address Keystone's argument that the notice of final hearing was "defective." The requirements for final hearing notices for watershed districts are set forth in Minn. Stat. § 103D.741 (requiring final hearing notice to be published and mailed).

23

Keystone does not argue that the final hearing notice omits any information required by the Watershed Law.[9] Rather, Keystone argues that the notice was defective because the District did not publish the notice and because the mailed notice was untimely.[10] The parties have stipulated that the notice of final hearing was postmarked on July 10, 2020, and the final hearing date was July 24, 2020.

We first address the publication requirement. Section 103D.741, subdivision 1, requires a watershed district to "give notice by publication of the final hearing." Keystone contends that "[t]here is no indication the Notice of Final Hearing was published." As the district court noted, however, the District "provided documentation of the publication of

---

[9] Under the Watershed Law, the mailed final hearing notice must contain:

(1) a brief description of the proposed project;
(2) a statement that the engineer's report and appraisers' report are on file with the managers and available for public inspection;
(3) the time and place of hearing; and
(4) a statement that the addressee's name appears as an affected party.

Minn. Stat. § 103D.741, subd. 2. Keystone claims that "the notices sent to the Ditch 66 landowners made absolutely no reference at all that an outlet fee would be assessed against Ditch 66." But notice of the outlet fee is not required by the Watershed Law to be in the final hearing notice, and Keystone makes no argument to the contrary.

[10] A watershed district is required to give notice of the final hearing "to each person, corporation, and public body that owns property benefited or damaged by the proposed project as shown by the engineer's and appraisers' report." Minn. Stat. § 103D.741, subd. 2. The notice that the District sent included the Ditch 66 property owners, and the District makes no argument here that the Ditch 66 property owners were not entitled to notice. As a result, we proceed under the uncontested assumption that the Ditch 66 property owners were among the property owners entitled to notice of the final hearing.

24

the notice of final hearing." The record contains an affidavit of publication,[11] which establishes that the notice of final hearing was published three times: on July 8, July 15, and July 22, 2020. *See* Minn. Stat. § 103D.011, subd. 22 (defining "publication" as "publication once a week for two successive weeks").[12] We therefore reject Keystone's argument that the District failed to publish the notice of final hearing.

We next address the mailing requirement. Section 103D.741, subdivision 2, requires a watershed district to "give the final hearing notice by mail" to persons owning property benefited or damaged by the proposed project "within one week after the beginning of publication." The mailed notice of final hearing was timely because it was postmarked on July 10, which was within one week after the beginning of publication on July 8. We also conclude that the mailed notice conformed to the Drainage Code.[13] We

---

[11] The parties did not mention this affidavit in their briefing to the court of appeals. Thus, understandably, the court of appeals stated that "there is no indication in the record that the notice was published." 989 N.W.2d at 909. That said, the record does include evidence of publication.

[12] The publication of the notice of final hearing also complied with the timing requirement of the Drainage Code, Minn. Stat. § 103E.005, subd. 24, which defines "publication" as "a notice published at least once a week for three successive weeks."

[13] Keystone points out that improvement proceedings under the Watershed Law "must conform to" the Drainage Code, Minn. Stat. § 103D.625, subd. 4, and argues that the mailed notice of final hearing was untimely under the Drainage Code. But the Drainage Code contains the same timing requirement for the mailed notice as the Watershed Law. The Drainage Code requires "notice by mail of the time and location of the final hearing" to be given "[w]ithin one week after the first publication of the notice." Minn. Stat. § 103E.325, subd. 3. As we conclude above, the District complied with this timing requirement because the notice was mailed on July 10, within one week of July 8 when the notice was first published.

therefore reject Keystone's argument that the District failed to give timely notice by mail.

\*     \*     \*

Under our holding in *Lenz v. Coon Creek Watershed District*, 153 N.W.2d 209 (Minn. 1967), the District was authorized to receive the improvement petition for Ditch 39 and conduct improvement proceedings, even though Polk County was the drainage authority for the ditch at the time the petition was filed. And the District was statutorily permitted to conduct the proceedings without the involvement of county officials, insofar as the involvement of county officials would be inconsistent with the Watershed Law. None of Keystone's other alleged procedural defects affect the District's authority to establish the improvement project over Ditch 39. Consequently, we affirm the decision of the court of appeals, which held that summary judgment against the District was improper. *See Keystone*, 989 N.W.2d at 909.

---

Keystone also argues that the *mailed* notice was untimely under section 103E.325, subdivision 1—which requires the final hearing to "be set 25 to 50 days after the date of the final hearing notice"—because the mailed notice "provided fewer than 25 days' notice" of the final hearing. But this argument fails because subdivision 1 does not tie the hearing date specifically to the date the final hearing notice is *mailed*. It is subdivision 3 that addresses mailing. And Keystone has cited no provision of the Drainage Code or the Watershed Law that requires notice by mail to be given at least 25 days before the date of the final hearing.

26

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

HENNESY and GAÏTAS, JJ., not having been members of this court at the time of submission, took no part in the consideration